IN RE ESTATE OF JACOB HUFFMAN, Deceased, GEORGE F. HUFFMAN et al., Respondents, v. WILLIAM T. HUFFMAN, Appellant.

### St. Louis Court of Appeals, June 4, 1908.

1. **ADMINISTRATION: Proceeding to Discover Assets: Proceeding Against Administrator.** A proceeding to discover assets of an estate in process of administration, embezzled, concealed or wrongfully withheld, may be had against an administrator as well as other persons. [Revised Statutes 1899, sec. 74, 78.]

2. ——: ——: **Title to Property.** In a proceeding under the provisions of sections 74 and 78, Revised Statutes 1899, interrogatories may be exhibited against the person cited and evidence heard on them to try the right of property, concealed or embezzled or otherwise wrongfully withheld by such person; the former rulings that such a proceeding was only to facilitate the discovery of hidden assets, preliminary to an action to recover them, and a showing, on the part of the person proceeded against, that they were held in good faith, would stop further proceeding, are unsound in principle and in conflict with the decisions of the Supreme Court. [Following Tygard v. Falor, 163 Mo. 242.]

3. ——: ——: **Property Sold by Administrator.** In a proceeding under sections 74 and 78, Revised Statutes 1899, against an administrator, where the affidavit charged that the administrator had in his possession certain property or had sold such property and retained the proceeds, he could be compelled to account either for the property or the money obtained for it.

4. **WITNESSES: Confidential Communications: Attorney and Client.** Statements made by a party to an attorney while the attorney was employed about his business, but regarding other matters than those concerning which he was employed, are not confidential and may be testified to by such attorney.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

REVERSED AND REMANDED.

*James H. Whitecotton, T. T. Rodes* and *T. P. Bashaw* for appellant.

*James P. Boyd* for respondent.

(1)   Appellant first contends that there is no precedent for such proceeding to discover assets belonging to an estate.   R. S. 1899, sec. 74.   This statute was followed in the probate court as shown by transcript of said court, and the administrator in this case, after respondents has applied to the probate court, and was granted leave to file interrogatories and filed the same, came into the probate court and voluntarily filed his answers thereto, under his oath, thus making and joining the issues in this case.   R. S. 1899, sec. 77; Tygard v. Falor, 163 Mo. 242.   (2)   The contention of appellant that the demurrer offered should have been given, is not borne out by either the evidence or the law of the case.   We contend that the argument that this proceeding should not have been carried further in the probate court, that examining the defendant under oath is untenable.   Such construction would leave the matter, whether or not the inquiry should be, entirely to the administrators when he was a party to the record, being defendant in the proceedings.   Brotherton v. Spence, 52 Mo. App. 664; Eans v. Eans, 79 Mo. 53; Johnson v. Johnson, 82 Mo. App. 352.   (3)   This is the latest utterance of this court upon this question, and yet, in the Tygard v. Falor, supra, handed down by the Supreme Court long after the cases on which appellant relies, this same question was raised in the cases of Hoehn v. Struttman, 71 Mo. App. 399; Gorden v. Eans, 97 Mo. 587; In re Rachael Stewart, 67 Mo. App. 61.

STATEMENT.—Appellant, William T. Huffman, is administrator of the estate of his father, Jacob Huffman, who died February 29, 1904.   Rebecca Huffman, widow of the deceased, was appointed administratrix of the estate to act in conjunction with her son, the appellant.   Said parties filed their inventory of assets prior to May 9, 1904, on which date George F. and E. L.

Huffman and Mattie A. Stivers, children and heirs at law of deceased, filed in the probate court a verified petition, wherein they said the administrator had failed to make a complete inventory of the personal property belonging to the estate, and enumerated the following items of property not inventoried as having been owned by deceased at the date of the inventory:

| | | |
|---|---|---|
| · 1250 | bushels of corn, value | $500 |
| 30 | tons of hay in the stack, value | 100 |
| 1 | one-horse-power corn crusher and | |
| 1 | hand corn sheller, value, | 35 |
| | | $635. · |

The petitioners averred said property was now in the possession of appellant as administrator, or had been sold and the proceeds converted to his own use; averred also that appellant had refused to inventory the property or account for the proceeds, but, as administrator, had been and was wrongfully concealing and withholding the same, and other property; wherefore the petitioners asked the court to cite him to appear and answer such interrogatories as might be filed, and asked also such further orders as might be deemed right in the premises. A citation was issued and served on appellant, who appeared in person and by his attorneys, as did the complaining parties. Appellant was duly sworn, examined on oath and denied the charges in the affidavit. The petitioners, as they styled themselves, then prayed leave to file interrogatories and appellant asked leave to file answers to the interrogatories, which requests were granted, and the cause continued until June 13, 1904. On the date last named the petitioners again asked and obtained leave to file interrogatories, filed them instanter, and on the same day appellant asked and was granted until June 23d to file answers, and the cause was continued to July 11, 1904. The interrogatories were as follows:

In re Estate of Huffman.

"No. 1. What, if any, personal property belonging to the estate of Jacob F. Huffman, deceased, and on the farm on which said deceased lived prior to and at the time of his death, was not inventoried by the administrators of said estate?

"No. 2. What, if any, corn in the crib or pen, belonging to the estate of Jacob F. Huffman, deceased, was on hand at the date of the inventory of said estate and not inventoried by the administrators of the estate?

"No. 3. What, if any, hay in the stack on the farm on which Jacob F. Huffman, deceased, died, and belonging to the estate of said deceased was on hand at the death of said deceased and not inventoried by the administrators of said estate?

"No. 4. State whether or not there was one corn crusher and one hand corn sheller belonging to said estate of said Jacob F. Huffman and on the farm on which said deceased lived and at the date of his death, which were not inventoried by the administrators of said estate?

"No. 5. Who was the owner of and in whom was the title of the farm on which the said Huffman died, prior to the 23d day of February, A. D. 1904?

"No. 6. State whether or not you occupied said farm from the year 1897? and during each year thereafter until the 23d day of February, A. D. 1904, and if so, what, if any, rent you paid the said Jacob F. Huffman, deceased, for the use of said farm; and especially what, if any, rent you paid for the years 1903 and 1904 and at what time and in what manner you paid said rent, if any; and specify what part was for grass land, if any part was for pasture, and what part and how much was for corn land?"

All the interrogatories except the fifth and sixth, were answered in the negative, and to those two the following answers were given:

"Answer (No. 5). I was the owner of the west-half of the southeast quarter and the southeast fourth of the southwest quarter of section nine (9), township fifty-three (53), range ten (10) west, being the farm on which Jacob F. Huffman died; but the record title up to the 23d day of February, 1904, was in Jacob F. Huffman.

"Answer (No. 6). I occupied said farm from the spring of 1897 and during each year thereafter until the present time. I paid no rent on one hundred and twenty (120) acres deeded to me by Jacob F. Huffman on February 23d, 1904, for any year or at any time. I rented the one hundred and twenty-acres (120) being the remainder of the two hundred and forty acre farm, from Jacob F. Huffman and paid him for rent of same two-fifths of all the crops grown on same and paid him two-fifths of the amount realized from the grazing pasture land, and paid all taxes on all of said land and kept up the fencing and farm in repair except for the year 1903, when and for which year said Jacob F. Huffman rented me said land for that year for services rendered by me to him in the care and feeding of his stock prior to that time."

Both parties waived a jury in the probate court and submitted their cause to the court, which found from the testimony that appellant had in his possession and under his control a corn crusher, a corn sheller and rent-corn belonging to the estate amounting to 560 bushels, of the value of forty cents a bushel, which he had not, but should have, included in his inventory. Thereupon the probate court adjudged appellant had concealed the aforesaid property and ordered him to cause the corn crusher and corn sheller to be inventoried and appraised, and that he pay to Rebecca Huffman, the administratrix, the sum of $234 for corn belonging to the estate and converted by him. Appellant took an appeal to the circuit court where the case was

tried before a jury and the following verdict returned:

"We, the jury, find that at the date of his decease, Jacob F. Huffman was the owner of the following described personal property, namely:

"One thousand and forty bushels of corn, one one-horsepower corn crusher and one hand corn sheller, but find that at the date of his decease, Jacob F. Huffman was not the owner of any hay; that the property never was thereafter inventoried by the administrators of the estate of said Huffman, and was on the 9th day of May, 1904, in the possession and under control of defendant, administrator, and by him wrongfully withheld."

In accordance with the verdict the court adjudged and decreed that the estate of Jacob Huffman have and recover of appellant, as administrator of said estate, said one thousand and forty bushels of corn, a one-horsepower corn crusher, and a hand corn sheller, and appellant, as administrator of said estate, was ordered to inventory said property as belonging to the estate and that the petitioners have and recover their costs. From said judgment an appeal was prosecuted to this court. The court, of its own motion and over the exception of appellant, gave an instruction of which we quote a portion and indicate the remainder:

"The court instructs the jury that the defendant, administrator, admits that prior to the date of Jacob F. Huffman's death, he rented of said Huffman, one hundred and twenty acres of land, said land not being the land described in the deed from said Jacob F. Huffman to said defendant, read in evidence; and that said defendant, as rent for said premises, was to pay said Jacob Huffman 2-5 of all crops grown on said premises, during said lease; and if the jury find from the greater weight of evidence in the cause, that during the running of said lease, and prior to the death of said Jacob F. Huffman, there was corn grown on said premises; that

any portion of said corn so grown was on the 9th day of May, 1904, in the possession or under the control of defendant, and that the same or any interest therein was at the date of the death of said Jacob F. Huffman, the personal property of said Jacob F. Huffman, and was not thereafter inventoried by said, or either administrator of the estate of said Jacob Huffman, deceased; and on the 9th day of May, 1904, was wrongfully withheld by defendant, then the jury should so find in their verdict, and unless they so find, their verdict as to the corn in controversy, must be for the defendant."

The rest of the instruction submitted the issues regarding the hay, corn crusher and corn sheller on the same legal theory, though, of course, not in the same language. The jury were told if they found for petitioners as to any of the hay or corn in controversy, to state the quantity of same withheld by appellant. On the trial of the case appellant propounded this question to T. T. Rodes: "I wish to ask you to state to the jury whether or not you ever had a conversation with him (deceased) in which he mentioned anything about the corn on the farm there?" The witness answered that he did have such a conversation, and was then told to state the circumstances and what was said. He said the conversation came up in this way: in the summer of 1903 deceased had made an arrangement with witness to borrow some money. In November, 1903, he sent for witness to come to his house to consummate the loan. Witness went to the farm, found deceased in failing health and thought it was best to induce him to borrow as little money as he could get along with. Witness said as he approached the house he saw pens of corn to the east and north of the dwelling house, and meant to suggest to the deceased that he dispose of the corn so as not to be compelled to borrow as much money as he had arranged for. Witness stepped to the door, looked at the corn and called deceased's attention to

it. At this point the witness was interrupted before he could relate the conversation, and the objection was interposed that the communication was privileged because made to witness as attorney for deceased. On this objection the conversation was excluded, appellant excepting to the ruling. The *voir dire* testimony on which it was excluded may be epitomized as follows: Rodes was an attorney at law, notary public, and loan agent. Deceased had procured a loan from him and had agreed to pay him ten dollars for going to the farm to look over the property, taking the acknowledgment of deceased and drawing up the deed of trust, preparing and examining the abstract and doing whatever was essential to close the transaction. Witness lent the money for two women who paid him for lending it. He said he was a practicing attorney, but did not consider lending money was part of his business as attorney; that Huffman applied to him for a loan; that he did not charge a fee for examining the abstract. When asked if his fee for said service was included in the ten dollars, he said the attorney for petitioners might put any construction on the matter he wished—if any payment was made for the examination it was paid by the deceased; that he (witness) examined the abstract as an attorney; that deceased could not get about and therefore had employed him to go to the farm.

There is evidence in the record which tends to show part of the corn in the cribs on the farm where appellant lived when deceased died, and alleged to have belonged to the latter and to have been omitted from the inventory, was of the crop of the year 1903. Taken in connection with appellant's answers and with the instruction given by the court, this evidence is material. The court told the jury appellant had admitted he rented one hundred and twenty acres of land from the deceased, and was to pay as rent two-fifths of the crops grown on the premises during the lease; further, that

if any portion of the corn grown on said premises prior to the death of the deceased, was in the possession and control of appellant on May 9, 1904, when the affidavit was filed, and such portion, or some interest in it, belonged to the deceased at his death, was not thereafter inventoried and was wrongfully withheld by appellant, the jury should so find.     Appellant in his answer to the sixth interrogatory admitted he had rented one hundred and twenty acres of land from his father from the year 1897 until the date of the answer, June 21, 1904, and averred he had paid his father two-fifths of all crops grown on the premises, except for the year 1903, for which year deceased had let the land to appellant for previous services rendered by the latter in caring for and feeding the stock of deceased.   Edward L. Huffman testified he saw about seven pens and one whole crib of corn—the whole equal to nine pens—in April, 1903; that this was the corn of the season of 1902; that he saw in 1904, corn in the pens; that some of the corn he had previously seen in 1903 had been taken out and replaced by other corn.   George H. Huffman testified seven pens of corn of 1902 were there after the death of his father; that none of the crop of said year had been delivered to his father; that he saw nine pens there in 1904, or more than he testified came from the crop of 1902; he saw five pens there after the affidavit was filed and they belonged to his father; saw them about the time the affidavit was filed (May 9, 1904); the last time he saw the corn was in June, 1904, just before his brother Edward left Missouri for California; saw a pen or two there that day.   He also testified the crops for both years, 1902 and 1903, were put in the pens. A. D. Buford, who bought most of the corn from appellant, said he purchased it April 14, 1904, paying $100 down and the balance of $366.65, on June 8th; that he bought four pens and there was a large pen there of the

crop of 1903; that he bought the crop of 1902 and "a very little bit of pen" of the 1903 crop.

GOODE, J. (after stating the facts).—1. This proceeding will lie against appellant as administrator for assets wrongfully withheld by him. Early decisions denying the relief against administrators and confining it to cases of concealment and embezzlement, are not in point, because founded on statutes which have been altered so as to bring within reach of the remedy, executors and administrators, and assets wrongfully withheld, as well as those concealed or embezzled. [See R. S. 1845, p. 75, sec. 9 et seq.; R. S. 1855, p. 130, sec. 7 et seq.; Act March 16, 1881.]

2. Appellant contends both the probate and the circuit court should have examined appellant on oath as the first step in the inquiry, and if he denied having concealed, embezzled or wrongfully withheld any of the property mentioned in the affidavit, and claimed to own it in good faith, should have gone no further with the cause. This position is taken on two grounds: first, the court was without power to try the title to the property, and, second, there is no statutory warrant for exhibiting interrogatories when the party proceeded against is an administrator. In support of these positions we are referred to the cases of Cardwell v. Stuart, 67 Mo. App. 61; Hoehn v. Struttman, 71 Mo. App. 399; Johnson v. Johnson, 82 Mo. App. 350, and Wilson v. Ruthrauf, 82 Mo. App. 435. The course pursued was erroneous unless authority for it can be derived from sections 74 to 78, inclusive, of the Revised Statutes of 1899; which we quote:

"If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe that any person has concealed or embezzled, or is otherwise wrongfully withholding any

goods, chattels, money, books, papers or evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before it, and compel such appearance by attachment. [Sec. 74.]

"If the party so cited does not admit the allegations in the affidavit, he shall be examined under oath, after which, at the instance of the administrator or executor, other witnesses may be examined both for and against such party; but before such other witnesses shall be examined, interrogatories shall be filed in writing, to be answered also in writing by the parties cited. [Sec. 75.]

"If such person refuse to answer proper interrogatories, the court may commit him to jail until he answer or be discharged in due course of law. [Sec. 76.]

"The issue upon the interrogatories and answers thereto shall be tried by a jury, or if neither of the parties require a jury, by the court in a summary manner, and judgment shall be rendered according to the finding and for costs, and if convicted the court shall compel the delivery of the property detained, by attachment of his person for contempt, and the court shall commit him to jail until he comply with the order of the court. [Sec. 77.]

"Like proceedings may be instituted on the affidavit of any person interested against executors, administrators, or surviving partners, and on conviction the court shall compel such executor, administrator or surviving partner to inventory the property and cause the same to be appraised as the property of the estate." [Sec. 78.]

In Cardwell v. Stuart, supra, a son of the decedent had filed an affidavit in the probate court charging the administrator of the estate with failing to inventory property. The administrator was examined in the probate court and ordered to inventory a sum of money,

In re Estate of Huffman.

from which order he appealed. In the circuit court he was again examined, and said court, after finding there had been no concealment or embezzlement of assets, dismissed the proceeding. Prior to the order of dismissal the affiant had asked to file interrogatories, that the administrator be required to answer them and witnesses be examined on the issues thus joined. The circuit court refused to follow this procedure, and the question, on appeal, was whether its view of the law was right. Construing sections 75 and 78 together, this court held the former section, which contemplates a proceeding against a third party, provides for interrogatories and the examination of witnesses only at the instance of the administrator of an estate; and that section 78 in saying like proceedings may be instituted against executors, administrators or surviving partners, does not empower parties who institute a proceeding against an administrator, to file interrogatories; and hence, in such a case, the proceeding must be restricted to an examination of the administrator under oath unless he consents to a trial; that his consent is essential to the further exercise of jurisdiction and the cause necessarily ends with his examination if he refuses to consent. In the other cases, supra, the two appellate courts of this State decided, in effect, that the proceeding on the statutes cannot go beyond an inquiry into the good faith of a claim of ownership under which a defendant withholds from an estate assets alleged to belong to it; that neither the probate nor the circuit court has jurisdiction to adjudicate the title to the assets. In Wilson v. Ruthrauf, this was said:

"Where an administrator fails to inventory a debt due from him to the estate, not from any wrongful motive, but in the bona fide belief that no such debt exists: As that if he had owed the intestate, he had discharged the debt to him in his lifetime. Or, if specific property be the subject of the objection to his conduct, that he

himself was the owner and not the estate, and other like instances, it was not contemplated by this statute that such question should be determined in such summary manner." [82 Mo. App. loc. cit. 440.]

We might distinguish this case from those cited because, after appellant had been examined in the probate court and had denied the charges in the affidavit, he did not move for a dismissal of the cause, but permitted interrogatories to be filed unopposed and requested leave to file answers. So far as appears, the trial in the probate court of the issues thus made up, was acquiesced in by appellant, and the statutes do not prescribe an examination of the defendant under oath in the circuit court after an appeal from a judgment in the probate court; but the case goes to the circuit court for a trial anew of issues already framed.

The cases cited not only say a case against an administrator cannot proceed after he denies detaining the assets; but say, too, that in a case against any defendant, administrator or stranger, the inquiry must be confined to the good faith of his claim of title or right to possession, and that the validity of his claim from a legal standpoint cannot be adjudicated. The court below took the opposite view in instructing that if the jury found the property in controversy belonged to the deceased when he died, and was wrongfully withheld by appellant when this proceeding was instituted, they should say so in their verdict. The good faith of appellant in detaining the property was not submitted, but the questions of whether deceased owned the property at his death and appellant wrongfully withheld it, were. This theory of the case was erroneous, if the foregoing decisions are sound in their construction of the statutes. We think they are unsound in principle and in conflict with the construction adopted by the Supreme Court. The Missouri statutes dealing with the subject differ from those of all the other States we have.

In re Estate of Huffman.

examined in essential particulars; chiefly in providing for a trial by jury of the issues raised. This provision is not found in any of the statutes of other States cited infra, except Maryland; and text-writers derive the proposition that the right of property cannot be tried in a proceeding like this one, from cases in other jurisdictions. [2 Woerner's Admr. Law (2 Ed.), *671 to *682, incl.; Schouler, Excrs., sec. 270; 18 Cyc. 216, par. D and notes.] But those cases, so far as the decisions are based on the lack of a statutory provision for a trial by jury, should be eliminated in considering the effect of our statutes. The opinions usually treat this omission as the decisive reason for saying property rights cannot be determined. [Dinsmore v. Bressler, 164 Ill. 211, 232; In re Beebe, 20 Hun (N. Y.) 462, 464; Howell v. Fry, Admr., 19 Ohio St. 556; Gardner v. Gillihan, 20 Ore. 598, 601.] In Maryland the Orphans' Court of probate jurisdiction, in analogy to the old chancery practice, may refer the issues to a law court to be tried but cannot try them itself. [1 Pub. Gen. Laws (1860), sec. 238, 240 incl.] Under statutes granting this privilege, it was held in a majority opinion, the jurisdiction of the Orphans' Court was confined to determining whether or not the defendant had concealed the property mentioned in the affidavit, and if he openly admitted possession, but claimed title, his right could not be determined. A dissent was filed. [Gilson v. Cook, Admr., 62 Md. 256.] In several States the sole aim of the law is the discovery of assets—not to compel the party in possession to turn over or inventory property, but to compel him to submit to an examination in order that his statements, and sometimes those of other witnesses as well, may be filed in writing as a basis for other proceedings to recover the property. [Maine Rev. Stat. (1903), p. 607, secs. 70 et seq.; 2 Mass. Rev. Laws, p. 1429, sec. 43; Gen. Stat. Conn., p. 71, sec. 367; New York Pub. Stat. 1901, ch. 190, p. 627;

Gen. Laws Rhode Island 1896, p. 696; Vermont Stat. 1894, secs. 2470, 2471; Iowa Ann. Code 1897, p. 1191, secs. 3315, 3316; 3 Mich. Comp. Laws 1897, secs. 9355, 9356; R. S. Minn. 1905, secs. 3722, 3723; Kas. Gen. Stat. 1905, secs. 3071 to 3075; Nebraska Comp. Stat., sec. 2717, 203, p. 555; Oreg. Ann. Code, 1 B. & C., secs. 1148, 1150; 3 Idaho Code Ann. 1901, sec. 4116 et seq.; Wis. Stat., secs. 3825, 3826.] In New York the statutes expressly provide that if the defendant files a verified answer alleging ownership of the property, the proceeding shall be dismissed without further examination. On this statute it has been held in many cases, of which we cite two, the defendant is entitled to a dismissal on filing such claim of title. [In re Lynch's Est., 31 N. Y. Supp. 767; In re Basch's Est., 33 N. Y. Supp. 424.] The Texas Statutes pertain only to papers and documents belonging to an estate. [Pasch., Ann. Dig. (1870), sec. 1370.] The statutes of Arkansas, Utah and Nevada permit a summary order by the court for the delivery of the detained property, but provide for no examination of witnesses or jury trial. [Ark. Rev. Stat. 1837, ch. IV, secs. 47 to 51; Utah Comp. Laws (1907), sec. 3927 et seq.; Nev. Comp. Laws, 2882, secs. 97 et seq.] The following decisions held the purpose of the statutes dealt with was to provide a means of discovery, not recovery, of assets. [Gardner v. Gillihan, 20 Ore. 598; Rickman v. Stanton, 32 Ia. 134; O'Dee v. McCrate, 7 Maine, 467; Selectmen v. Boylston, 4 Mass. 318; Manly v. Judge of Probate, 99 Mich. 441; Saddlington's Est. v. Hewitt, 70 Wis. 240; Ive's Appeal, 28 Conn. 416.] It will be seen from the foregoing summary of statutes and cases, that the adjudications in other jurisdictions can lend little assistance in the attempt to ascertain the object and effect of our statutes, in consequence of the wider scope of the procedure these provide and the use of materially different language— language suggestive of an intention to create a new

method of both discovery and recovery. It is worthy of note that in the statutes of 1845, where the proceeding was first authorized and presumably the policy of the legislature put into effect, it is said if the defendant appears and in his answer to the interrogatories denies the right of the executor or administrator to the goods, chattels, money, etc., "the right thereof shall be tried by a jury; or, if neither party require a jury, by the court, in a summary manner, and judgment shall be rendered according to the right and for costs." This language imports a purpose to provide a method for determining the right of property as between the estate and the person accused of concealing or embezzling assets. The statutes of 1855 (sec. 10) instead of saying the right shall be tried, say the issue shall be tried; meaning the issue of whether the property is concealed or embezzled. The present statutes cover assets concealed, embezzled or otherwise wrongfully withheld, and sections 77 and 78 say the issue upon the interrogatories and answers filed, shall be tried by a jury, etc., and if the defendant is convicted, the court shall compel him to deliver the property detained; or, if he be an executor or administrator, compel him to inventory it. In our opinion this legislation was not enacted merely to provide a method of investigating the good faith of a person who detains assets, but to provide also a remedy by which detained assets could be brought quickly into the course of administration. The notion that the only object was to facilitate the discovery of hidden assets, preliminary to an action to recover them, is fallacious and founded on the decisions of jurisdictions where statutes, enacted only to assist discovery, prevail; and which do not take care of the constitutional right of trial by jury in cases involving property rights, because no property rights are involved under said statutes, but only information. In this State a jury trial of the issues is allowed and also

an appeal; thus preserving to a defendant all the rights he would enjoy in any other form of action. It is unlikely that this elaborate procedure was devised simply to discover assets. The purpose was broader—to expedite the administration of estates by affording a new and speedy remedy for collecting assets. The same policy led to the creation by the administration statutes of other extraordinary remedies; for instance the allowance of small demands (R. S., sec. 200) or the redemption, sale and conveyance of real estate (ch. 1, art. 8). In order to bring the administration of estates under the control of courts of probate as much as possible, and to hasten the proceedings therein those matters may be disposed of by novel procedures.

We turn from the foregoing argumentation to consider the effect of the decisions rendered by the Supreme Court on the statutes in question. In Eans v. Eans, 79 Mo. 53, an administrator proceeded against the widow of his decedent to get possession of assets of great value alleged to belong to the estate. The widow claimed them under a marriage settlement, and on the first hearing, which was before the law embraced assets wrongfully withheld, the circuit court held the question was whether the widow had concealed or embezzled the property; and held also, if the court found the property was kept by her under color or claim of right as a separate estate, it had no jurisdiction, but the administrator must resort to the proper action at law or in equity. On this view of the law the court dismissed the cause for want of jurisdiction in the probate court to entertain it. On appeal the Supreme Court reversed the ruling and said that, under the statutes, the probate court had jurisdiction to hear and decide the question of whether the property in controversy remained the separate property of the widow under the marriage contract, and that the circuit court had committed error in dismissing the complaint for

want of jurisdiction. The case was retried in the lower court, again appealed, and the second appeal is reported as Gordon, Admr., v. Eans, 97 Mo. 587, 4 S. W. 112, 11 S. W. 64, 370. By reading the instructions copied in the opinion, it will be perceived that on the second trial, the circuit court tried the entire question of ownership under the marriage settlement, as affected by various circumstances tending to show a reduction of the property to possession by the husband with the assent of his wife. Meanwhile, before the second trial, the law had been amended so as to make the proceeding applicable, not only to cases of concealment and embezzlement, but to those of wrongful detention of property. Several opinions were rendered on the second appeal. The judge who wrote the opinion on the first appeal and the main one on the second, so explained and modified, in a rehearing opinion, what he had previously said, that it is difficult to discern the theory of law on which the case was decided. But the judgment was affirmed, and this involved a decision that the trial court had not committed error in adjudicating the right of property. One concurring opinion upheld this course by virtue of the amendment of March 16, 1881, extending the remedy to cases of assets wrongfully withheld. The opinion said the administrator had submitted the issue of wrongful withholding "based on the question of actual title," and the court, by virtue of the amendment, had power to hear and determine such an issue. A judge or two dissented from the proposition that the probate court could determine the right of property. If the precise point decided in Gordon v. Eans is dubious, there can be no doubt about what was decided in Tygard v. Falor, 163 Mo. 242, 63 S. W. 672, a case identical with the one at bar. Falor was executor of his father's estate, and Tygard, as trustee, instituted a proceeding in the probate court against him on the statutes for the purpose of compelling him to inventory a certain asset.

In re Estate of Huffman.

The affidavit charged Falor with having in his possession $2,800 in money belonging to the deceased which had not been inventoried; with receiving the money as agent of the deceased and never accounting for it. Interrogatories were propounded in the probate court. which indicated the money had been collected by the executor from sales of cattle belonging to his father. His answers to the interrogatories admitted he had sold and collected the money for the cattle and had deposited part of it in certain banks in his own name, but set up that the money thus deposited was not turned over to his father because the latter had given it to him and told him to keep it; that for the same reason he had not charged himself as executor with the money. He denied having concealed it or any other property belonging to the estate. On the trial in the probate court. judgment was for the defendant and the plaintiff appealed. In the circuit court there was a trial *de novo* on the interrogatories and answers, and the jury, found the defendant guilty of wrongfully withholding $2,738. from the estate as charged. Among other instructions the defendant requested the court to inform the jury that, if his father had given him the money, he was not required to inventory it as part of the estate and the verdict should be in his favor; that the proceeding was criminal in its nature, and if the jury believed the defendant had refused to inventory the money in good faith as a gift from his father, and in no way had tried to conceal it, the verdict should be for defendant; further, that the sole and only question presented was the guilt or innocence of the defendant in concealing the money as charged. These instructions were refused and on the appeal, error was assignd for their refusal. Error was assigned, too, on an instruction given by the court which told the jury to find the defendant guilty of wrongfully withholding the money from the estate, unless they found his father had given it to him to keep

and hold as his own personal property and that the burden of proof as to this issue was on the defendant. The Supreme Court affirmed the judgment in said cause; thereby affirming the proposition that the right of property may be tried in a proceeding like this.   The opinion dealt with the alleged error of the trial court in refusing to instruct that, if the defendant had omitted to inventory the money in question because he claimed it openly as a gift from his father, the verdict should be for the defendant.   The court said the instruction given for the plaintiff was correct, the two instructions asked by defendant were properly refused and that the substantial issue to be tried was the question of whether or not Falor had given the money in dispute to his son. The very proposition invoked by appellant in the present case was raised in said cause by the executor, to-wit; that the inquiry must be restricted to the question of good faith; and some of the authorities now cited in support of this proposition, were cited in the executors' brief in said cause; viz: Cardwell v. Stuart, 67 Mo. App. 61; Stewart v. Glenn, 58 Mo. App. 489; Hoehn v. Struttman, 71 Mo. App. 399.   Though the Supreme Court did not expressly ·overrule those cases, it ignored them and decided against their doctrine.   The opinion in Tygard v. Falor cannot be reconciled with the prior decisions of the appellate courts and, of course, we must follow the Supreme Court.   Its opinion is decisive against both of appellant's main contentions, namely; that interrogatories cannot be exhibited against an administrator and evidence heard on them, and that the right of property cannot be tried.   It is also decisive that the issues to be tried are made up by the interrogatories and the answers, and that the probate court and  the ·circuit court on appeal, have  jurisdiction. Therefore we overrule the contrary contentions of appellant.

3.   But it is said the corn had been disposed of

before the present proceeding was instituted, and, therefore, as to this asset the petitioners must fail.    It will be observed the affidavit charged appellant with having the several assets in his possession, or with having sold them and retained the proceeds.    The purpose is to compel him to account for either the property or the money obtained for it, and the statutes cover money as well as property.    The corn in controversy was in appellant's possession when the inventory was made and also when this cause was begun, unless, previous to the latter date, he had sold it.    In either contingency, if the corn belonged to the deceased, appellant should have inventoried it as an asset of the estate.    It is true the remedy does not reach assets a defendant had disposed of before the filing of an affidavit (Dameron v. Dameron, 19 Mo. 317) ; but we do not take this rule to mean that, if property of an estate passes into the possession of an administrator and he withholds it from the inventory and sells it, he cannot be compelled, under an affidavit charging in the alternative, to inventory the money received for it.    The case of Tygard v. Falor, in which the executor was forced to inventory money he had deposited in bank in his own name, precludes the idea that the statutes, in allowing money as well as property to be recovered, means the remedy shall be confined to a particular fund—the identical money which belonged to the decedent.    Moreover in the case at bar the evidence is not all one way on the issue of whether appellant had some of the rent-corn on hand at the time the proceeding was instituted.    There is evidence he still had a crib or two; but hardly so much as the jury found.

4.    We think Rodes was a competent witness to prove any admissions by the deceased regarding the corn and against the latter's interest.    It appears from the course of the inquiry that appellant expected to prove by Rodes, statements of the deceased tending to

prove appellant owned the corn in dispute. [Jackson v. Hardin, 83 Mo. 175, 187.] Stringent as is the rule that communications between attorney and client are privileged, it cannot be extended to embrace such an instance. The conversation Rodes was about to relate when interrupted, was not a communication to him as attorney for the deceased, but was a conversation which arose casually and in answer to an inquiry by the witness propounded for his own purpose and with a view to giving the deceased unsolicited advice. That is to say, Rodes was going to advise the deceased to sell the corn and use the money, thereby reducing the amount of the loan he would make. It is to be remembered the deceased had already applied for a loan and wanted no advice about the amount. What he said to Rodes was not said to him as an attorney. In fact it is difficult to detect the relationship of attorney and client between the two. Rodes said he did not consider he acted as attorney in making loans, and his only statement which indicates he acted as an attorney in the transaction with deceased was that he examined the abstract as such. But he said he examined the abstract for the parties lending the money. For a communication to be privileged, it must have been made confidentially during the relationship. [Weeks, Attys. (2 Ed.), 307, 323; Hatton v. Robinson, 14 Pick. 416.] The purpose of the privilege is to enable men to communicate facts to their attorneys freely and without fear of publicity, in order that professional aid may be obtained. The rule is to be construed with reference to its policy and ought not to be weakened by a narrow construction; but neither should it be extended beyond reason, thereby shutting off sources of evidence. Communications not of a confidential character, but casually made in conversations between the attorney and client, and which the client would have stated as readily

to any other person, do not fall within the reason of the rule. In ex parte Gfeller, 173 Mo. 248, 269, the Supreme Court took notice of statements of this character and held they were not privileged, saying there are many transactions between attorneys and clients which have no element of confidence in them, and about these the attorney is competent to testify. This question is especially well considered in Hatton v. Robinson, 14 Pick. 416; and our ruling is, we think, in line with that and other precedents. [Weeks, Attys. (2 Ed.), 307.]

5. As some of the testimony went to prove part of the corn of the year 1903 is in dispute, the statement in the instruction that appellant had admitted he was to pay two-fifths of the crops grown each year for rent, was misleading. This advice was correct only in case none of the crop of the year 1903 was in contest; but both the evidence and the briefs show it was in contest. Instead of admitting he was to pay two-fifths of the crop of said year as rent, appellant averred the land was rented to him by his father for prior services—in effect without a rent charge. Unless it appears on another trial that no part of the crop of 1903 is in controversy, a distinction should be taken between said crop and those of previous years, in instructing the jury as to what appellant admitted in his answers to the interrogatories.

The judgment is reversed and the cause remanded with the directions to the circuit court to set aside the judgment and retry the issue as to the corn or its proceeds, only. As to the other assets in dispute, the present verdict may stand. All concur.