In the Matter of the Estate of EMMA LIPIC, Deceased; GERTRUDE WHEELER, Admrx., d. b. n. of Estate of EMMA LIPIC, Deceased, Appellant, v. JOSEPH LIPIC, JR., and EMIL LIPIC, Executors of Estate of JOSEPH LIPIC, SR., Deceased, Respondents, No. 42058— 243 S. W. (2d) 100.

Court en Banc, October 18, 1951.

624

*Roberts P. Elam* for appellant; *Elam & Campbell* of counsel.

*Charles A. Newmann* and *William Kohn* for respondents.

CONKLING, P. J.—Basically, this contest is between two estates claiming substantially the same assets, or their money equivalent. The instant action by Gertrude Wheeler, Administratrix de bonis non of the estate of Emma Lipic, deceased (hereinafter called appellant), against Joseph Lipic, Jr., and Emil Lipic, Executors of the Estate of Joseph Lipic, Sr., deceased (hereinafter called respondents) is one under the statutes relating to the discovery of assets of decedent's estate (R. S. Mo. 1949, Sections 462.400 to 462.440) and originated in the probate court of the City of St. Louis. After a hearing the citation was dismissed by the probate court, and an appeal was taken to the circuit court of that city. Upon the trial before a jury in that court, appellant had verdict for the total amount, principal and interest, of $34,899.07.

Thereafter in due time respondents filed their motion to set aside the verdict (and the judgment entered thereon) and to enter judgment for respondents in accordance with their motion for a directed ver-

dict. That motion the circuit court sustained on ground three thereof. Thereafter appellant perfected her appeal here and now seeks reinstatement of her judgment had below. This case is related to State ex rel. Joseph Lipic, Jr., et al. v. Flynn, Judge, 358 Mo. 429, 215 S. W. (2d) 446. A portion of the instant facts are there stated.

After appellant's petition for citation for discovery of assets was filed in the probate court, and the "order for citation" was served, appellant filed her interrogatories (68 in number) propounded to respondents. Appellant's petition for citation charged that Joseph Lipic, Sr., as administrator of the estate of Emma Lipic (his wife) who had died March 10, 1942, had failed to correctly inventory her estate, and had concealed and embezzled certain assets of Emma Lipic's estate; that such claimed assets were notes, deeds of trust, cashier's check, cash, etc.; that Joseph Lipic, Sr. had such assets in his possession or under his control up to February 5, 1946, the date of his death; that Joseph Lipic, Sr. died testate and letters testamentary on Joseph Lipic, Sr.'s estate were issued to respondents (sons of Joseph Lipic, Sr. by his first wife) on February 15, 1946; and that appellant "has good cause to believe and does believe" the executors (respondents) have said assets in their possession or under their control.

The interrogatories related specifically to certain claimed assets, i. e., personal properties (alleged to have been owned by Emma Lipic) and were alleged to be (1) a promissory note of August J. and Julia Baar, dated February 27, 1929; unpaid balance thereon of $3650 and deed of trust securing note and constituting a lien on certain Bonita Avenue property; (2) promissory note of Wm. H. and Anna Rathert dated Dec. 29, 1936; $6,000 due thereon; and deed of trust securing note and constituting a lien on certain Geyer Avenue property; (3) promissory note of E. E. and Bertha Easterday dated September 20, 1930; $3,000 due thereon; and deed of trust securing note and constituting a lien on certain Flad Avenue property; (4) promissory note of A. Rengel, dated April——, 1939; balance due $4500 and deed of trust securing note and constituting a lien on certain Delor Street property; (5) Cashier's Check No. 47322 of South Side National Bank dated August 21, 1940, payable to Joseph and Emma Lipic for $3901.28, and (6) $2500 in cash.

Joseph Lipic, Sr., a widower, had four small sons, Joseph, Jr., Emil, Sylvester and Walter. He thereafter married Emma Berg in 1906. Of that marriage there were three children, Gertrude (now Mrs. Gertrude Wheeler), Marie (now Mrs. Marie Phelan) and Leonard. All those seven children grew to maturity, married and left the family home, survived Joseph Lipic, Sr. and Emma Berg Lipic, and are still living. Emma Lipic was engaged in business and had a checking account and a safe deposit box at the Tower Grove Bank. For five years before her death Emma Lipic was blind. Her daughters

assisted in her banking and business transactions. Because of her blindness Emma Lipic discontinued maintaining her own safe deposit box. She transferred securities, cash and other things, previously held in her own box, to the safe deposit boxes of her daughters, and such personal property remained there until after Emma Lipic's death on March 10, 1942.

On March 16, 1942, Joseph Lipic, Sr. advised his daughters that he was to be the administrator of their mother's estate and requested they deliver to him the personal property they had which had belonged to their mother. The daughters went to their safety deposit boxes, removed certain personal property therefrom, placed all of it in a paper bag and delivered the bag and contents to Joseph Lipic, Sr. Those articles were: the four notes and deeds of trust above mentioned, the $2500 in cash above mentioned (this $2500 cash Joseph Lipic, Sr., later gave back to his two daughters) and various life insurance polices of which Joseph Lipic, Sr. was beneficiary. Joseph Lipic, Sr. was named administrator of Emma Lipic's estate on March 20, 1942, and so remained until his death. There were no creditors of Mrs. Lipic's estate.

On March 26, 1942 Joseph Lipic, Sr. surrendered to the South Side National Bank, its cashier's check No. 47322, for $3901.28 (which was payable to ''Joseph and Emma Lipic'') and received therefor another cashier's check from that bank No. 65220, dated March 26, 1942, in the face amount of $3901.28 and payable to ''Joseph Lipic, Administrator of Estate of Emma Lipic deceased.'' The original cashier's check No. 47322, had been kept in the Lipic home since August 21, 1940. There had been a controversy about that check and neither Mr. or Mrs. Lipic had endorsed it during Mrs. Lipic's lifetime. The evidence shows that $3901.28 was the proceeds of three lots sold for Joseph and Emma Lipic, which lots were held by them in an estate by entirety. On March 26, 1942 Joseph Lipic, Sr. closed out Emma Lipic's checking account at the Tower Grove Bank, which then had a balance of $746.31, by transferring that sum to a new account in the name of ''Estate of Emma Lipic, deceased, Joseph Lipic, Sr., administrator.'' He then deposited in the latter account the cashier's check No. 65220 obtained earlier that day. Thereafter from time to time, by thirteen checks, he checked $4647.59 out of that account. On May 4, 1942, as administrator of the Estate of Emma Lipic, Joseph Lipic, Sr. filed the inventory in the Emma Lipic estate in the probate court showing as the sole item thereon $746.31 in- cash on deposit in the Tower Grove Bank.

On May 4, 1942, in the Emma Lipic estate, the probate court allowed Joseph Lipic, Sr. $346.31 as a year's support and $400 as his absolute property, and made an order of no further process. Between March 16, 1942 and the date of his death, February 5, 1946, the four real estate notes above mentioned had matured, and Joseph Lipic, Sr.

had received all the unpaid principal and accrued interest. On February 12, 1947 upon application of Gertrude Wheeler the order of "no further process" in the Emma Lipic estate was set aside, the death of Joseph Lipic, Sr., the administrator of the estate of Emma Lipic, was suggested, and Gertrude Wheeler (daughter of Joseph Lipic, Sr. and Emma Lipic) was appointed administratrix de bonis non. This proceeding was that day instituted.

The trial court set aside the jury's verdict and the judgment in appellant's favor on Ground 3 of respondents' motion, which was as follows: "3. The evidence conclusively established that at the time of the institution of this proceeding by the filing of the affidavit in the Probate Court in the Emma Berg Lipic estate, pursuant to Sec. 63, R. S. Mo. 1939, defendants (respondents) did not have in their possession or under their control personal property of Emma Berg Lipic, deceased, or any of the items of personal property or money described in the interrogatories, and at no time had them or any of them in their possession or under their control, and consequently plaintiff was not entitled to a finding or judgment under said Secs. 63-67 (R. S. Mo. 1939) in this proceeding, and judgment of dismissal should have been entered in accordance with defendants' said motions for a directed verdict."

Both Joseph Lipic, Sr., and his wife, Emma Lipic, were customers of Rengel-Weber Realty Co., and its successor, the Jos. C. Rengel Realty Company. Both husband and wife purchased notes and deeds of trust from both those companies. These four real estate notes and deeds of trust were purchased from that real estate company. The records and cancelled checks of the Realty Company as to the Flad Avenue note and deed of trust and the Bonita Avenue note and deed of trust tend to show the notes and deeds of trust were owned by both Joseph Lipic, Sr. and Emma Lipic. The evidence tends to show that the note and deed of trust of both the Geyer and the Delor Street property had been purchased by Emma Lipic, and were her separate property. At various times Emma Lipic had personally used the Bonita and Flad Avenue notes and deeds of trust as collateral at the Tower Grove Bank upon personal bank loans which she made there.

The answers of respondent executors to the above mentioned interrogatories (1) admitted that after March 16, 1942, Joseph Lipic, Sr. had in his possession and control the four above mentioned notes and deeds of trust, (2) averred the four notes and deeds of trust were purchased with his funds, and were his property, and, that if Emma Lipic had any interest therein, such interest was as tenant by the entirety which ceased upon her death, (3) averred that the cashier's check No. 47332 represented proceeds from the sale of real estate which Joseph Lipic, Sr. and Emma Lipic held and sold as tenants by entirety, and in which cashier's check and funds she had no interest after her death, (4) denied all knowledge of the $2500 cash item, (5)

denied Joseph Lipic, Sr. at the time of his death, had any custody, possession or control of any of said personal property, and (6) denied respondent executors ever had any possession, custody or control of any of said personal property. Respondents' answer also pleaded that appellant was estopped to prosecute this action because (1) no claim was presented either during the lifetime of Joseph Lipic, Sr. or against his estate, (2) appellant misled Joseph Lipic, Sr. into believing no such claim would be presented and, that after the death of their mother, and during Joseph Lipic, Sr.'s lifetime, he made his daughters the beneficiaries of large insurance policies on his life and gave them many thousands of dollars in cash and bonds, and (3) Mrs. Lipic's heirs participated in a division of her property which they accepted in full of their share of Mrs. Lipic's estate. This affirmative plea of estoppel the trial court struck out of the answer.

From the record before us it clearly appears that the respondent executors (of the Joseph Lipic, Sr., estate) never were in the possession, custody or control of the claimed assets and personal property mentioned and listed in the interrogatories. During the course of the trial, Mr. Elam, counsel for appellant, candidly admitted: "Of course, the proof shows conclusively they (the respondent executors) never were in possession of any of the deeds of trust or the checks in question, and, perhaps, that they never were in possession of the $2500 in cash." That admission the record supports in every detail. Appellant's reply brief admits respondents "never had possession of the properties here involved."

In her brief appellant states that "the sole question in this appeal is whether a showing of possession or control *by the respondents* of the personal property or money of Emma Lipic (described in the interrogatories) is essential to a recovery by this appellant in this proceeding." (Emphasis ours)

On the other hand, it is respondents' position that "possession (by those cited) of the disputed assets (listed in the interrogatories) at the time of the filing of the affidavit is basic and indispensable" and that a money judgment for their value may be rendered only "if it is found that afterwards (after the filing of the affidavit) the party cited (had the claimed assets and) had disposed of them," or, if the party cited "still retained possession of the disputed assets and refused to surrender them." It is respondents' further position that the above cited statutes are intended "to operate upon the wrongdoer himself—not upon his personal representative. The wrongdoer himself must be in being."

The question before us for determination here is whether in this character of statutory proceeding, and under these facts where it is conceded by all parties that the respondent executors never had possession and control of the personal property mentioned in the interrogatories, and where the executors never came into possession

of the proceeds of such personal property, may the appellant, as against the personal representatives of the alleged wrongdoer, have a *money judgment* for the alleged value of the assets?

In statutory proceedings to discover alleged assets of a decedent's estate the issues are framed by the interrogatories and the answers thereto. Appellant contends that charges made in a petition for citation may be broadened and extended by the issues made by the interrogatories and the answers thereto. State ex rel. Lipic v. Flynn, supra, In re Weingart's Estate, (Mo. App.) 170 S. W. (2d) 972. That may be conceded. Appellant also contends that her interrogatories filed in this case did so broaden the issues so that now the instant issues include (as between appellant and respondents) not only the possession and control of the specific original personal property above mentioned and claimed to have been embezzled (and described in her petition for citation and interrogatories), but includes also, as between appellant and respondents, an issue as to the possession and control of the proceeds (or money value) of the original personal property claimed to have been embezzled; and, that therefore, appellant may now have a money judgment against respondents for the money value of the specific assets which she claims Joseph Lipic, Sr. embezzled from the estate of Emma Lipic. In that last stated contention appellant is in error.

The inventory of the estate of Joseph Lipic, Sr. showed $11,201.40 in cash, a total of only $12,200.40 in personal property and no real estate. But that cash was all in checks of the Joseph Lipic Pen Company, payable to Joseph Lipic, Sr.

The original petition for citation charged that "affiant has good cause to believe and does believe that Joseph Lipic, Jr. and Emil Lipic, executors of the estate of Joseph Lipic, Sr., deceased, have in their possession and under their control, the goods, chattels, money, accounts receivable, books, papers, evidences of debt, and other personal property of the said Emma Berg Lipic, deceased, which were concealed, embezzled or otherwise wrongfully withheld by Joseph Lipic, Sr. as aforesaid". At no place in either the petition for citation, or in her 68 interrogatories does appellant charge that the *respondent executors* hold, control or withhold *the proceeds,* or that they ever received the proceeds (the money derived from the sale) of any property claimed to have been embezzled by Joseph Lipic, Sr., Administrator, from the estate of Emma Lipic.

As above stated, it is not only abundantly established by the proof, but it is conceded that the respondent executors have never had *control, custody or possession* of any of the specific property claimed to have been embezzled and withheld from the Emma Lipic estate. If the respondents never had possession, custody or control of the specific personal property then it follows, as of course, that respondents did not dispose of such specific personal property. The evidence

shows unequivocally that Joseph Lipic, Sr. during his lifetime did receive the money value of the claimed assets. The $2500 in cash he returned to his two daughters, and he gave Leonard Lipic $1250.00. In his testimony Leonard Lipic disclaimed all interest in or to any of the property in question here.

Both parties rely on State ex rel. Lipic v. Flynn, supra, and each contends that the Lipic v. Flynn case rules this case in their favor. There is no ambiguity in the Lipic v. Flynn opinion. Judge Ellison's opinion there reviewed and analyzed such cases as In re Estate of Huffman, 132 Mo. App. 44, 111 S. W. 848, 854, Newell v. Kern, (Mo. App.) 218 S. W. 443, Davis v. Johnson, 332 Mo. 417, 58 S. W. (2d) 746, Lolordo v. Lacy, 337 Mo. 1097, 88 S. W. (2d) 353, and many others, and reviewed also the history of the statutes, and there the court en banc concluded and ruled: ''Under these decisions and others referred to therein, it is our opinion that the title to disputed assets may be tried by the probate court in a discovery of assets proceeding; and that a money judgment for the value thereof may be rendered *if the party cited is found to have disposed of them* (the specific assets alleged to have been wrongfully withheld or embezzled) for money *after the institution of the proceeding by the filing of the affidavit* pursuant to Sec. 63'' (now Sec. 462.400). (Emphasis ours)

The statute contains three fundamentals of jurisdiction (1) that the person cited to appear in court must have the assets of the deceased in his possession or under his custody and control, (2) that such cited person must have concealed, embezzled or wrongly withheld such assets, and (3) that the assets are the property of the estate in question. There is no evidence whatever in this record of the first and second just above stated jurisdictional requirements of the statute. The statute states that ''the court may cite *such person*'' (whom affiant has good cause to believe and does believe) who ''has concealed or embezzled'' the claimed assets. There can be no authority in the statute to cite or to have judgment against the personal representatives of the person who embezzles assets, unless such personal representatives have possession, custody and control of the disputed assets, or unless it appear that they received, as a part of their intestate's estate, the proceeds of the sale or other disposition of such assets. But appellant alleges in her affidavit that she believes the personal representatives of Joseph Lipic, Sr. deceased, have the alleged assets ''in their possession or under their control''. Upon the trial it was proved, and appellant concedes, that the personal representatives did not ever have such claimed assets in their possession or under their custody and control. We find no proof that the personal representatives ever received the proceeds of the sale or disposition of the assets. And it affirmatively appears that they *did not* receive any of such proceeds. Under Lipic v. Flynn, supra, before

a money judgment can be rendered in this character of action against them, respondents (the persons cited) must have possession of the assets and refuse to turn them over, or be guilty of conversion of the assets either by disposal of the assets after the filing of the affidavit, or by their refusal to surrender such assets, or their proceeds.

We rule that under these circumstances appellant may not have a money judgment in this proceeding against respondents for the alleged value of the claimed assets. And we approve what the court said in White v. Blankenbeckler, 115 Mo. App. 722, 726, 92 S. W. 503, as follows: ''It is not clear on what theory of law, the defendant, as administrator, can be deemed a party to a wrongful conversion of personal property by his intestate. It seems to us that plaintiff's remedy is the ordinary one provided by law for the allowance of demands against a decedent's estate in the probate court.'' See also, Welch v. Diehl's Estate, (Mo. App.) 278 S. W. 1057.

The other cases cited and relied on by appellant distinguish themselves upon the facts. All of those cases were discussed in Lipic v. Flynn, supra. In the Estate of Huffman, supra, the issues were much wider than in the instant case. The petitioners there (children of deceased) filed a petition for citation against the administrator of their father's estate. They therein averred the administrator had the property in his possession, or, that it had been sold and ''the proceeds converted to his own use.'' Interrogatories were filed. There the action was against the living administrator. The jury's verdict found the administrator was wrongfully withholding certain personal property. Under those circumstances it was held that the administrator could be compelled to account ''for either the property or the money obtained for it''. The issues were wide enough to permit such alternative relief.

In re Weingart's Estate, supra, the issue likewise was whether the living executor of the decedent's estate did or did not have possession of the note and deed of trust, or, if he had sold it, the *proceeds* of the note. Alternative relief was held proper. That fact alone sufficiently distinguishes it from the instant case. In Lolordo v. Lacy, supra, a trustee under a deed of trust, who placed the proceeds of a foreclosure sale in his own bank account, and declined to turn it over to the estate, was proceeded against under the discovery statute. In that case the living trustee had the actual funds in question in the bank commingled with his own money. It was held that the summary proceedings to discover assets was a proper remedy to compel the payment of such monies to the estate. There the very thing it was sought to recover was money, and a money judgment was of course a proper one.

In Davis v. Johnson, supra, the interrogatories and the answer of the parties charged with concealing and wrongfully taking the assets raised the issues (1) as to certain money, and other personal

property, in the possession of defendants and which, it was claimed, was the property of the estate, *or*, (2) if any such was not then in possession of defendants the disposition they had made of it. The issue was held to be wide enough to permit the alternative relief of a money judgment. The cases relied on by appellant are not authority under the instant issues and facts.

In view of our conclusion above stated it is unnecessary to discuss other questions raised in the briefs. The judgment appealed from must be affirmed. It is so ordered. All concur.

PER CURIAM:—The opinion of CONKLING, P. J. in Division No. One is hereby adopted as the opinion of the Court en Banc. However, it appears both from the record in this case and the records of this Court in Division No. One, in Joseph Lipic, Jr. and Emil Lipic, Successor Trustees, et al. v. Gertrude Wheeler and Marie Phelan, 362 Mo. 499, 242 S. W. (2d) 43, that the assets sought to be recovered not only never came into the possession and control of the executors of the estate of Joseph Lipic, Sr., deceased, but that most of them were (either specifically or their proceeds) placed in a trust by Joseph Lipic, Sr., during his lifetime, in which Gertrude Wheeler and Marie Phelan were among the beneficiaries. The distribution of the corpus of this trust is now finally settled by this opinion in Division One. Thus it conclusively appears from the actual facts admitted and established in both this case to discover assets and the trust distribution case that, if there was any conversion of assets by Joseph Lipic, Sr. from the estate of his wife Emma Berg Lipic, neither such converted assets nor their proceeds ever came into the hands of his executors.

In the prohibition case, State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S. W. (2d) 446, the basis of our ruling was that "the proceeding in the probate court to discover assets, and the action for conversion in the circuit court are parallel and do *or may* involve the same issue and seek the same relief at the option of Gertrude Wheeler, adm'x. d.b.n. who instituted both." Thus we held, to the extent that the same relief was involved in both, that the probate court had first acquired jurisdiction in the discovery of assets proceeding (which was filed first) and that in the conversion case (filed thereafter) the circuit court would or might encroach on the jurisdiction of the probate court to the extent that the two proceedings "do *or may* involve the same issue." Therefore, it would seem reasonable to construe our rule in prohibition as prohibiting the circuit court only to the extent that such encroachment could actually exist and not to the extent that no encroachment could be possible. Since it now conclusively appears that these two cases do not and cannot involve the same issues and that, under the admitted facts, Gertrude Wheeler adm'x. d.b.n. could have no remedy in the discovery of assets

634

proceeding for a conversion (if there was any) of the specified assets of the estate of Emma Berg Lipic, deceased, by Joseph Lipic, Sr., and that the only possible remedy therefor would be in the conversion suit now pending in the circuit court, it would now be proper for her (if she desires to proceed in that case) to make application to this Court to so construe our rule in prohibition and to declare the circuit court free to proceed therein.