Frances Adams, Formerly Frances Kosinski, and Stanley Kosinski, Apellants, v. Josephine Rakowski and Alex Rakowski, Appellees.

Gen. No. 42,337.

Opinion filed June 16, 1943.

MITCHELL KILANOWSKI, of Chicago, for appellants.

BULL & RUGEN, of Chicago, for appellees; FOLLETT W. BULL and RICHARD C. RUGEN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Frances Adams, formerly Frances Kosinski, and Stanley Kosinski are the petitioners and Alex Rakowski and Josephine Rakowski are the respondents in the instant proceeding for contempt. The petitioners will be hereinafter referred to as plaintiffs and respondents as defendants. Plaintiffs' father predeceased their mother and sometime prior

to June 1928 the latter before her death turned over $1,000 in cash and securities of the face value of $6,000 to her father, Stanley Rakowski, who received same in trust for the use and benefit of plaintiffs, his grandchildren. At that time plaintiffs were minors, less than 10 years old, and the trust was created solely by parol agreement. Upon the death of plaintiffs' mother, Sophie Kosinski, their grandfather, Stanley Rakowski, assumed the guardianship of their persons and caused them to be placed in St. Hedwig's Orphan Asylum where they remained several months. Then with the consent of their grandfather they were taken from said orphanage and went to live at the home of Alex Rakowski and his wife Josephine Rakowski, where they continued to live for a number of years. Alex Rakowski was the son of Stanley Rakowski and a brother of plaintiffs' mother, Sophie Kosinski. On or about October 1, 1928, which was shortly after plaintiffs commenced to reside with defendants, the grandfather of the Kosinski children, delivered the $4,000 and $2,000 second mortgage notes and the $1,000 in cash, which he had received from plaintiffs' mother, to the defendants, Alex Rakowski and Josephine Rakowski. Plaintiff Stanley Kosinski resided with defendants until June 1, 1935 and plaintiff Frances Adams, formerly Frances Kosinski, resided with them until December 1, 1935.

When the original complaint was filed in this cause on September 27, 1938 asking that defendants be declared constructive trustees of the property entrusted to them for the use and benefit of plaintiffs and that they be required to make an accounting as to said property, plaintiffs were still minors but they have since attained their majorities.

The original decree, which was entered June 25, 1940, after finding that defendants were entitled to certain credits, including reasonable compensation for the care, maintenance and education of plaintiffs

while they resided with said defendants, adjudged that: "the said Alex Rakowski and Josephine Rakowski, as trustees *ex malificio,* pay over to the plaintiffs, Stanley Kosinski and Frances Kosinski, within thirty (30) days from June 17th, 1940, the sum of Four Thousand Five Hundred Forty-Six and 15/100 ($4,546.15) Dollars and interest thereon from November 17th, 1939, at the rate of 5% per annum, being the sums of money wrongfully withheld from the plaintiffs, Frances Kosinski and Stanley Kosinski; that in the event the said defendants, Alex Rakowski and Josephine Rakowski should fail to pay the said sum of Four Thousand Five Hundred Forty-Six and 15/100 ($4,546.15) Dollars with interest thereon from November 17th, 1939, at the rate of 5% per annum, within thirty (30) days from June 17th, 1940, that they shall within said period of thirty days disclose in writing and file in this cause a statement under oath setting forth in detail the assets they jointly and severally possess, either in their name or any other name [and the names] of all banks in which they or either of them now have, or may have had accounts at any time since October of 1928, together with the amounts and dates of deposits and withdrawals therefrom, and that the plaintiffs have leave to apply for further proceedings with reference to said statement and to apply for a reference to a master for the purpose of interrogating Alex Rakowski and Josephine Rakowski with reference to the same."

Defendants having failed to make the payment to plaintiffs as directed by the decree, the latter filed a petition for a rule upon defendants to show cause why they should not be held in contempt of court for their failure to comply with the terms of the decree as to such payment. A rule to show cause was ordered to issue. Both defendants filed answers to said rule and the cause was referred to a master in chancery for a hearing on the rule to show cause and the answers

thereto. The master's term of office having expired during the pendency of said hearing he was appointed a special commissioner and as such made his report. In his report he made detailed findings as to defendants' financial affairs and as to every purported interest either of them had in real or personal property. His report concluded with the finding that "said defendants have not complied with the terms of the decree heretofore entered in this cause directing them to pay certain moneys to the plaintiffs; that said defendants have no property with which to pay said moneys and that their income has not been sufficient to enable them to comply with the terms of said decree. I therefore find that the failure on the part of said defendants to comply with the terms of said decree was not wilful." The special commissioner recommended "that the rule against each of said defendants be discharged."

After overruling all exceptions to the report of the special commissioner the trial court entered a decree on February 20, 1942 in which it expressly found the facts as to defendants' financial affairs to be as the special commissioner found them and that defendants' failure to comply with the terms of the decree "was not wilful." The decree also found that defendants were the owners of the equity of redemption as to certain premises which had been theretofore sold at a foreclosure sale but that the value of the interest of defendants in said equity of redemption was "nothing." The decree then ordered that defendants convey to plaintiffs "their right, title and interest in and to" said equity of redemption and that they assign to plaintiffs "their right, title and interest in and to a certain contract between themselves, certain other parties and the Home Owners' Loan Corporation." It was further found by the decree that said conveyance and assignment were executed by defendants in open court and delivered to and accepted by

the attorney for plaintiffs. The decree concluded by ordering that the rule against defendants to show cause be discharged. Plaintiffs appeal from this decree. It should be noted that the "equity of redemption" conveyed by defendants to plaintiffs as directed by this decree had no value and that defendants' interest in the contract assigned to plaintiffs was likewise valueless.

Plaintiffs insist that the trial court should have found defendants guilty of contempt of court and ordered them committed to the county jail until such time as they paid plaintiffs $4,546.15 and interest thereon as required by the decree entered on June 25, 1940, or until they were otherwise discharged from imprisonment by due process of law.

Defendants assert that the only question involved in this appeal "is whether or not upon a civil judgment, the defendants can be imprisoned for the nonpayment of the same, even though they have turned over all of their available assets in satisfaction of the judgment and have been found by the court below not to be guilty of any wilful conduct in not paying the same."

It should be pointed out at the outset that in a proceeding such as this to punish defendants for civil contempt for their failure to comply with a decree directing them to repay money received from plaintiffs or on their behalf, the defense of inability to pay, even though such inability to pay was found not to be contumacious, is not governed by the same rules as are applicable to a petition for discharge from imprisonment on the ground of insolvency after commitment as for a civil contempt for their failure to comply with such decree.

The general rule seems to be that in proceedings to punish one as for civil contempt for failure to carry out the directions of a decree to pay money or deliver up property, proof that the disobedience to the decree

has not been wilful but was due solely to the pecuniary inability or other misfortune of the accused, *not resulting from his fraudulent conduct to produce that condition, will purge him of the contempt.* (*Tudor v. Firebaugh,* 364 Ill. 283; *People v. LaMothe,* 331 Ill. 351; *Blake v. People,* 80 Ill. 11; *O'Callaghan v. O'Callaghan,* 69 Ill. 552; *Wightman v. Wightman,* 45 Ill. 167; *Herrington v. Cassem,* 82 Ill. App. 594; *Schuele v. Schuele,* 57 Ill. App. 189; Rapalje on Contempt, p. 192; *Hendryx v. Fitzpatrick,* 19 Fed. 810; *Nisbet v. Tindall,* 115 Ga. 374; *Pierce v. State,* 54 Kas. 519; *Camden v. Virginia Safe Deposit & Trust Corp.,* 115 Va. 20; *McClung v. McClung,* 33 N. J. Eq. 462.)

The foregoing rule is not applicable to this case since defendants received and had possession of the money and property committed to their care for the benefit of plaintiffs and wrongfully disposed of or withheld that portion thereof, which they were directed by the original decree to pay plaintiffs. Defendants' receipt and possession of said money and property and their wrongful disposition or withholding of that part of same directed to be repaid, precludes them from pleading poverty or inability to pay as a defense to this proceeding to punish them as for civil contempt. That this is the law is beyond question. In *Tudor v. Firebaugh,* 364 Ill. 283, the court said at pp. 287, 288:

"The power of a court of equity to punish for contempt by imprisonment upon the refusal of a trustee to pay over money actually received and wrongfully withheld is well established. (*People v. LaMothe,* 331 Ill. 351; *Chew's Appeal,* 44 Pa. 247; *In re Meggett,* 105 Wis. 291, 81 N. W. 419.) It is no defense in such case that the fund has been devoted to other purposes. (*People v. Zimmer,* 238 Ill. 607; *Rudd v. Rudd,* 184 Ky. 400, 214 S. W. 791; *Jastram v. McAuslan,* 29 R. I. 390, 71 Atl. 454; *Wise v. Chaney,* 67 Iowa 73, 24 N. W. 599.) However, section 12 of article 2 of the consti-

tution provides that 'no person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is strong presumption of fraud.' In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or *that he had the money and wrongfully disposed of it.*'' (Italics ours.)

Defendants are mistaken in their assertion that the amount of money specified in the original decree to be repaid by them to plaintiffs is nothing more than a ''civil judgment'' which constitutes a debt, imprisonment for which is prohibited by section 12 of article 2 of the constitution of the State of Illinois. True it is that the money ordered repaid is a civil judgment but it is that and more. Inherent in said judgment is the element of fraud in the wrongful disposition or withholding of money and property entrusted to them for the care and benefit of plaintiffs. It will be noted that one of the provisions of the foregoing section of the constitution is that ''no person shall be imprisoned for debt, unless . . . there is a strong presumption of fraud.'' Thus defendants' inability to pay and the fact that their failure to pay the amount decreed was not wilful did not present a legal defense to the rule to show cause.

We think, however, that it is pertinent to mention that in the recent case of *People v. Lewe,* 380 Ill. 531, it was held that the court which committed a contemner in case of civil contempt ''has jurisdiction to consider a petition for discharge because of inability to carry out the order of the court'' and ''to discharge him from custody on showing of inability to comply with the order for the payment of money.'' The Supreme Court had not theretofore directly passed

upon this question and in stating one of the reasons for the conclusion reached by it in that case said at p. 538: "It may be observed that if this be not true, there is no court and no method by which one incarcerated for contempt of court in such a case could ever hope to obtain his freedom if unable to comply with the order. Such a situation would amount to life imprisonment for debt, which is contrary to the genius of our form of government."

For the reasons stated herein we are impelled to hold that the trial court erred in ordering that the rule to show cause against defendants be discharged.

The decree of the circuit court of Cook county of February 20, 1942 is reversed and the cause is remanded with directions to find defendants guilty of civil contempt of said court.

*Decree reversed and cause remanded with directions.*

FRIEND and SCANLAN, JJ., concur.