### Nellie Clubb, Appellant, v. Herbert William Clubb, Appellee.

### Gen. No. 44,386.

Opinion filed June 7, 1948.   Rehearing denied June 18, 1948.   Released for publication June 23, 1948.

FRED A. GARIEPY and M. L. BERKEMEIER, both of Chicago, for appellant; OWEN RALL and JOHN SPALDING, both of Chicago, of counsel.

ARTHUR ABRAHAM, of Chicago, for appellee.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This appeal is by plaintiff from an order of the superior court dismissing her petition against defendant, to show cause why he should not be held in contempt of court for failure to comply with a decree entered by that court on April 22, 1946, directing defendant to pay plaintiff the sum of $44,764.

Plaintiff and defendant were married in London, England, on April 9, 1925. On May 18, 1927, plaintiff commenced her action for divorce against defendant, on the ground of adultery, in the divorce division of the High Court of Justice in the County of Middlesex in London. Defendant was personally served with process, duly appeared, and on April 18, 1928, an interlocutory decree of divorce was granted plaintiff on the ground of adultery. February 4, 1929, an absolute decree was entered, dissolving the marriage, and on February 11, 1929, an alimony and maintenance order was entered in said cause, *nunc pro tunc* as of February 4, 1929, directing defendant to pay plaintiff a sum which would yield to plaintiff 8 pounds per week, after deduction of income taxes. Plaintiff received only 357 pounds on the decree, which was realized from the cash surrender value of a policy of insurance on his life. Nothing more was paid upon the foreign decree.

On April 9, 1943, plaintiff filed the present complaint, alleging the foregoing facts, and not denied by the answer of defendant. The defense of laches and statute of limitations were pleaded in the answer as affirmative defenses, and that the allegations of the complaint do not entitle plaintiff to equitable relief.

Upon a hearing, a decree was entered on April 22, 1946, which found that the High Court of Justice sitting in the County of Middlesex, London, England, is a court of general jurisdiction in law, equity and di-

vorce, with power to enter decrees of divorce and orders of alimony and maintenance. The decree also found that the decree of February 11, 1929, entered in the English court, provided the following:

·"Upon hearing the Solicitor for the Petitioner and by consent the Petitioner by her Solicitors undertaking not to apply to increase the amount payable under the Order, I do Order that Herbert William Clubb, the Respondent, do pay or cause to be paid to Nellie Clubb, the Petitioner, during their joint lives and until further order, as from the date of the Decree Absolute herein, to-wit, the 4th day of February, 1929, Maintenance at and after the rate of such a sum as will yield to the Petitioner 8 pounds per week after deduction of income tax.

Liberty to the Respondent to apply to vary this order in the event of the Petitioner re-marrying or if the Respondent becomes from any cause unable to make the payments hereby ordered."

The instant decree then finds that the English decree for dissolution of marriage and said decree for maintenance have not been amended, vacated or annulled and are still in full force and effect in said court, and that there is due to plaintiff from defendant under said English decree $44,764. It orders defendant "to pay to plaintiff in behalf of maintenance and alimony the sum of $44,764." It further orders that judgment be entered for said amount and that execution issue thereon. No appeal was taken from this decree.

On October 2, 1947, plaintiff filed her petition for a rule against defendant to show cause why he should not be held in contempt of court, in which it was alleged that defendant has failed and refused to pay petitioner the maintenance or alimony above decreed to be paid to her, and that he is now and for many years has been employed by the Cudahy Packing Company and receives compensation in excess of $12,000 per annum. To this petition defendant filed an an-

swer, in which he admitted he made no payments on account of said decree entered April 22, 1946, in the superior court; that his failure to pay has not been wilful; that he has no estate or money out of which to pay any part thereof, and has only his wearing apparel and personal effects. He alleges that his compensation from the Cudahy company is $10,314, and after deduction of taxes his net income is $8,418 per annum; that said income is not more than sufficient to maintain defendant in the ordinary standard of living necessitated by his position, and that he has been unable to save any money whatever to apply on said decree of April 22, 1946. The record further discloses that an execution on the decree of April 22, 1946, was issued and served on defendant, and that defendant filed a debtor's schedule with the sheriff, showing no property with which to satisfy said execution. Upon a hearing said petition was dismissed for want of equity.

Summarized, the contentions of the respective parties are—on behalf of plaintiff:

(a) That the chancellor erred in dismissing the petition for contempt because the English decree was a decree for alimony, and that the superior court had the power under the rule of comity to enter its decree of April 22, 1946, based upon the English decree;

(b) That both the English decree and the instant decree show that the amount due is for the support and maintenance of plaintiff;

(c) That the decree of the superior court directing him to pay, may be enforced by contempt under the power vested in a court of chancery by the Chancery Act, ch. 22, § 42, Ill. Rev. Stats. 1947 [Jones Ill. Stats. Ann. 106.06], and by the inherent power, without the statute, vested in a court of chancery to compel obedience to its decree;

(d) That the evidence taken upon the hearing of the petition and answer abundantly shows defendant to have been guilty of wilful and wanton refusal to

comply with the instant decree; on behalf of defendant:

(a) That the English decree, being that of a foreign country providing for the payment of money, can be sued upon only as a debt and an ordinary judgment obtained as at law, and that equity has no jurisdiction in an action upon said English decree;

(b) That the superior court has no jurisdiction to enforce either the English decree or the instant decree by contempt under any rule of comity;

(c) That the full faith and credit clause of the Constitution of the United States, § 1, Art. IV, does not apply to a judgment or decree of a foreign country;

(d) That the evidence justified the dismissal of the petition for want of equity.

The only reported case in this State, which discusses the enforcement by contempt of a decree for alimony of a sister state, is *Rule v. Rule,* 313 Ill. App. 108 (Second District). In a carefully considered opinion, the court reviews the conflicting authorities in this country upon this question. It was there held at p. 111:

". . . there is considerable authority supporting the proposition that a decree for alimony represents more than a debt; that its basis is the obligation of a husband to support his wife and children, which is a matter of public concern, whether the cause of action arises in the State where the decree is rendered, or in another State to which the parties have moved; that the urgency for its effective enforcement is equally as great in one State as in another; therefore, it should be enforced by the same remedies as are applicable to domestic decrees for alimony. In this view the courts of one State will enforce a foreign decree for alimony, or more accurately speaking, a local judgment based on a foreign decree for alimony will be enforced by equitable remedies, as by contempt proceedings against the defendant for not complying with the judgment of

the court, as is customary in the enforcement of local decrees for alimony.''

The Supreme Court of the United States, as early as *Barber v. Barber*, 62 U. S. (21 How.) 582, said:

'' . . . courts of equity will interfere to compel the payment of alimony which has been decreed to a wife by the ecclesiastical court in England. Such a jurisdiction is ancient there, and the principal reason for its exercise is equally applicable to the courts of equity in the United States. It is, that when a court of competent jurisdiction over the subject-matter and the parties decrees a divorce, and alimony to the wife as its incident, and is unable of itself to enforce the decree summarily upon the husband, that courts of equity will interfere to prevent the decree from being defeated by fraud. The interference, however, is limited to cases in which alimony has been decreed; then only to the extent of what is due, and always to cases in which no appeal is pending from the decree for the divorce or for alimony. . . .

The parties to a cause for a divorce and for alimony are as much bound by a decree for both, which has been given by one of our State courts having jurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any State of the United States, the court having jurisdiction, will be carried into judgment in any other State, to have there the same binding force that it has in the State in which it was originally given. For such a purpose, both the equity courts of the United States and the same courts of the States have jurisdiction.''

A decree or judgment of a foreign State must be given in the courts here the same effect which would be given to it by the courts of the country in which it

was rendered, unless it be against the policy of the State in which its recognition is asked. *Roth v. Roth*, 104 Ill. 35; *Baker v. Palmer*, 83 Ill. 568.

We agree with the conclusion reached in the *Rule* case. By the rule of comity the instant decree, though based on that of a foreign country, should be here enforced upon principles of public policy involved in the obligation of a husband to support a wife. If it were otherwise, a husband, determined to defeat a decree for alimony, could cross the border lines of our forty-eight states, or cross the span of one foreign country to another, to avoid enforcement by contempt, and by resort to fraudulent practices endeavor to put his property or income beyond the reach of an execution. The mere transformation of obligation to support, into more specific form, such as a decree to pay, does not make it an ordinary debt but a continuing obligation. *Barclay v. Barclay*, 184 Ill. 375; *Rule v. Rule.*

There is another sound basis upon which the power to enforce the decree of the superior court may be sustained. Section 42, ch. 22, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 106.06], provides for the several methods of enforcing a decree in chancery, and also provides that it may be enforced by "the exercise of such other powers as pertain to courts of chancery, and which may be necessary for the attainment of justice." The Illinois Constitution, 1870, Art. VI, § 12, confers upon the court, jurisdiction of all causes in equity. The legislature is without power to deprive it of any of this jurisdiction. *Stephens v. Chicago, B. & Q. R. Co.,* 303 Ill. 49, 51. Section 12 of Article II of the Constitution, which prohibits imprisonment for debt, has no application to the wilful refusal to obey this type of decree. *Mesirow v. Mesirow*, 346 Ill. 219. Alimony is not a debt which can be discharged by bankruptcy. *Barclay v. Barclay.* The instant decree directed defendant to pay the amount found due to plaintiff for support and maintenance. It had inherent

power as a court of chancery, as well as the power conferred by section 42 of the Chancery Act, to compel obedience to its decree. In *Tudor v. Firebaugh,* 364 Ill. 283, the court, speaking of this subject, said at p. 288:

''No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful. . . .

Though a court of chancery has the power to commit for failure to comply with any of its decrees, yet where there is no other ground for holding the defendant in contempt, the remedy is harsh and should be resorted to only where there are no other reasonable means by which the decree may be enforced. A large class of money decrees come within the constitutional prohibition against imprisonment unless there be fraud on the part of the debtor or he shall refuse to surrender his property for the satisfaction of his debts.''

In the *Tudor* case it was determined that the contemnor did not wilfully violate the decree ordering him to pay, and that what property he had, he offered to turn over to apply on the decree. In *People v. Lewe,* 380 Ill. 531, the power of a court of equity, under section 42, to compel obedience to its decree to pay money, by imprisonment for contempt, was again recognized. In this class of cases, the contemnor must be afforded a hearing upon the question of wilful disobedience of the decree, and whether circumstances beyond his control show inability to comply with the decree. *Adams v. Rakowski,* 319 Ill. App. 556, and cases there cited.

The power of the equity court to enforce its decree for the payment of money under section 42 was again called into question in *Cohen v. Cohen,* 291 Ill. App. 39.

That was an action to release dower under section 17, ch. 68, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 64.17], which provides that when the husband or wife is insane, and remains continuously so for one year, and therefore incapable of executing a deed relinquishing dower, a petition may be filed on the chancery side of the court in the county where the real estate to be affected is situated. Section 20 of the act also requires of petitioner, as one of the conditions for granting the relief sought, security for the protection of the interests of the insane person, and "the proper support of such insane person, as the court shall deem satisfactory, and may from time to. time renew or change the same, or require additional security." In that case the decree directed him to pay the guardian *ad litem* $100 per month for the support and maintenance of the insane wife. The husband failed to comply with the decree, and upon a hearing for contempt the chancellor found the husband had wilfully refused to comply with that portion of the decree for the support and maintenance of the insane wife and committed him to imprisonment for contempt. This court in sustaining the chancellor quoted from *Schmidt v. Cooper*, 274 Ill. 243, 250:

"The power to punish for contempt is inherent in every court of justice, and necessarily includes all acts calculated to impede, embarrass or obstruct the court in the due administration of justice, and the power is independent of statutory provisions."

In *State of Illinois v. Froelich*, 316 Ill. 77, 83, it was held that the power of courts to punish for contempt does not depend on constitutional or legislative grant, "but is inherent in all courts as necessary for self-protection and as an essential auxiliary to the administration of the law."

We are satisfied that the chancellor in the instant case had the power, not only under the rule of

comity, but under section 42 of the Chancery Act, to enforce its decree by contempt if the facts warranted it. We then come to a consideration of the facts disclosed in this record.

The evidence unmistakably shows that defendant left England soon after the decree for divorce was entered and has never offered to pay anything on the English decree. He has been steadily employed by the Cudahy company for many years, and by his own admission, his net salary is $8,418 per year. Upon the hearing for contempt he was examined as to his estate, assets, money or property. When specifically asked about his expenditures and necessary living expenses, he disclosed his living expenses to be approximately $275 per month, his net salary over $700 a month, leaving a difference of over $425 per month, which he claims he was obliged to use for entertainment in connection with his position. He testified: "I have to entertain. I am single. People come into town. I am asked to take them out. I spend a certain amount of money out of my own pocket in entertaining some of them because they seem a little more expensive than I think my expense account could be charged for, so I am out of pocket on that sort of thing, and I have to maintain a certain position here, nice people whom I know, and when I get through I haven't anything left." He further testified the company allows all general expenses, such as meals, hotel room, car fare and plane fare, except they don't allow for entertaining; "generally speaking, entertainment when I go out with some of my customers is not allowed."

Defendant was given every opportunity upon the hearing, and it was incumbent upon him, to show what he actually required for living expense. The only showing he made was as outlined. It further appears from the record that by arrangement with his employer, defendant was paid his salary in advance, thereby putting it out of the reach of garnishment. We

are satisfied that his failure and refusal to pay plaintiff since the entry of the English decree on February 11, 1929, and the entry of the instant decree April 22, 1946, was wilful and deliberate. He offered plaintiff not one dollar due her for support through these years. In the light of his conduct, there results a strong inference of fraud from the arrangement he made with his present employer to receive his salary in advance. It convinces us that it was a deliberate, wilful and contumacious device to evade the instant decree. The showing he made upon the hearing, in his effort to purge himself of contempt, may be characterized as in *Shaffner v. Shaffner,* 212 Ill. 492, where the court said:

"He does not show what was done with this money except to say that it took it all to pay living and running expenses. This is not sufficiently definite. Estimates and guess-work will not answer. He who seeks to establish the fact that his failure to pay is the result of lack of funds must show with reasonable certainty the amount of money he has received. He must then show that that money has been disbursed in paying obligations and expenses which, under the law, he should pay before he makes any payment on the decree for alimony. It is proper that he first pay his bare living expenses; but whenever he has any money in his possession that belongs to him and which is not absolutely needed by him for the purpose of obtaining the mere necessaries of life, it is his duty to make a payment on this decree."

We must reverse the order appealed from and, as was done in *Adams v. Rakowski,* remand the cause with directions to find defendant guilty of civil contempt of said court.

*Order reversed and cause remanded with directions.*

NIEMEYER, P. J., concurs.