244 S.W.2d 91 (1951)
ZEITINGER
v.
MITCHELL et al.
No. 42318.
Supreme Court of Missouri, Division No. 1.
December 10, 1951.
*92 Frank Mashak, Irwin Walker, St. Louis, for appellant.
James E. Crowe, City Counselor, John P. McCammon, Associate City Counselor, and John J. Shanahan, Asst. City Counselor, all of St. Louis, for respondents.
CONKLING, Presiding Judge.
Ferdinand C. Zeitinger (plaintiff-appellant) appealed from the order of the circuit court sustaining the three motions filed by the various defendants for a directed verdict, entered at the close of plaintiff's evidence, in an action wherein the latter sought $20,000 damages for an alleged false arrest and imprisonment alleged to have occurred in February, 1946. The defendants Mitchell, Siebels and Scism were members *93 of the police force in the city of St. Louis; defendant Schlater was sheriff of Wayne County, Missouri, and defendant Schultz was administrator of the estate of Anna E. Jacobs, which was then in the process of administration in the probate court of Wayne County, and was a resident of that county.
These facts appear. Anna E. Jacobs died in Wayne County on November 20, 1941. Defendant Schultz was appointed administrator of her estate. On January 8, 1943 Schultz, as administrator, filed in the probate court his statutory affidavit stating that Ferdinand C. Zeitinger, a resident of the City of St. Louis, Missouri, had concealed and was wrongfully withholding $608.97, the property of decedent Anna E. Jacobs at the time of her death; that at the time of the filing of the affidavit said money was in the possession of Zeitinger or under his control; and asked that Zeitinger be cited, summoned and compelled to appear in the probate court to answer interrogatories concerning such concealing and wrongful withholding of said money from said estate. Plaintiff Zeitinger was thereupon duly cited and summoned but did not appear in the probate court of Wayne County on January 25, 1943, the day he was cited to appear. The probate court thereupon issued its order and writ of attachment to the Wayne County sheriff. Upon that writ plaintiff was brought before said probate court of Wayne County. Interrogatories were filed in the matter and upon the trial in the probate court of the issues made by such interrogatories and the answers thereto, in which testimony was heard thereon, there was a finding against the administrator.
The administrator thereupon appealed to the circuit court of Wayne County and upon the trial there de novo on April 5, 1944, the jury found "Fred C. Zeitinger guilty of wrongfully withholding the sum of $608.97 of money belonging to the estate of Anna E. Jacobs, deceased." Judgment was thereupon entered that Fred C. Zeitinger was wrongfully withholding said money; "and was withholding said money at the date of the filing of the complaint and the citation in the probate court of Wayne County, Missouri, on which the proceedings herein are based, therefore the Court finds that said Fred C. Zeitinger, was so wrongfully withholding and is now wrongfully withholding said money in said sum, which was the property of Anna E. Jacobs, deceased"; and therein ordered Zeitinger to forthwith pay to the administrator said money so wrongfully withheld from the estate. Thereupon Zeitinger duly appealed to the Springfield Court of Appeals. On June 26, 1945, that appellate court affirmed the judgment of the Wayne County circuit court. See In re Jacobs' Estate (Schultz v. Zeitinger), 238 Mo.App. 833, 188 S.W.2d 956. After the mandate of the Court of Appeals was filed in the circuit court, the latter court filed its transcript, certificate, mandate and judgment in the Wayne County probate court that Zeitinger was guilty of wrongfully withholding said money from said estate. Upon that mandate the probate court duly entered its findings and order that Zeitinger deliver such money, the property of said estate, to the administrator Schultz. But Zeitinger nonetheless thereafter continued to wrongfully withhold said money from said estate.
Thereafter, on February 4, 1946, the matter regularly came on again for hearing in the probate court of Wayne County, upon complaint that Zeitinger had not paid to the estate the $608.97, and thereafter that court entered therein its judgment and order, and thereupon issued its attachment and commitment, fully reciting in both its judgment and commitment in detail all the various steps, required findings and circumstances. After finding in that judgment that Zeitinger was still wrongfully withholding the money, and that he was therefore in contempt under what is now Section 462.430, references are to RSMo 1949, unless otherwise specified, it was ordered therein that attachment and commitment issue, and that plaintiff be committed to the common jail of Wayne County until such contempt was purged by the payment of the sum so wrongfully withheld, and costs. Neither that judgment nor that commitment are here attacked.
Plaintiff's instant petition charged that on February 7, 1946, he was unlawfully *94 arrested in St. Louis upon the above mentioned attachment and commitment of the probate court, and through the action of the defendant St. Louis police officers Mitchell, Siebels and Scism, and the defendant sheriff Schlater, and was transported by Schlater to Wayne County and there placed in jail. Thereafter on February 9, 1946, plaintiff purged the contempt by the payment of the money adjudged to have been wrongfully withheld from the Anna E. Jacobs Estate, and the costs. Plaintiff instantly alleges that his arrest and confinement in jail in February, 1946, after the adjudication of contempt and upon the above order of attachment and commitment issued by the Wayne County probate court, was unlawful.
In the instant case plaintiff, in part, testified:
"Q. Mr. Zeitinger, when Anna E. Jacobs died, did you have in your possession any money that had been given you by her? A. Yes, I did.
"Q. How much did you have? A. I think I had the sum of $3,606.00 in my possession at the time of her death.
"Q. That was in money, in cash, was it? A. In cash, yes, sir.
"Q. Where did you have that? A. In a safe deposit box * * *
"Q. Now, did you collect any money for Mrs. Jacobs or Mrs. Jacobs' estate after she died? A. I collected a mortgage from Gieselman.
"Q. What was the amount of that? A. I think it was in the nature of around $2800.
"Q. Now, tell us what becamethat was in money, too, was it? A. That was in cash, too.
"Q. And what did you do with that? A. That and $3,000, I sent a cashier's check to Walter Schultz, a cashier's check for around $5800.00.
"Q. What did you do with this $2800 from the Gieselman note immediately after you got it? A. I immediately got a cashier's check and took the $3,000 and sent that to Walter Schultz.
"Q. Did you do that immediately upon receipt of the $2800? A. Practically so, yes.
"Q. Now, you say the $3,606.36, is that what that was? A. That is right.
"Q. That was money that you had received in cash? * * *
"Q. And after you sent this cashier's check to Mr. Schultz, how much remained in your possession in cash money? A. Six hundred and some dollars and a few cents.
"Q. Would you say it was $608.97? A. I think it was that amount."
With respect to the circumstances under which he finally turned that $608.97 over to the estate, after he had been committed to jail in Wayne County, plaintiff testified:
"Q. Did he give you a blank check? A. He gave me a blank check and then took me over to the judge's house.
"Q. Judge who? A. Judge Templeton.
"Q. Judge Templeton, Judge of the Probate Court down there? A. Yes.
"Q. Then, what happened? A. They filled out the check and I signed it.
"Q. Have you got that check with you? A. Yes, sir. * * *
"Q. You finally did return the money, didn't you, before you got out of jail? A. That is right. * * *
"Q. And you knew at the time then that the judgment was that you pay over to the administrator $608.97 in money, that that judgment found you to be wrongfully withholding, you knew that, didn't you? A. Well, I was waiting for some notice from the court."
Plaintiff here admitted that at one time he received $3606.36, and that another time he received $2800, all the property of and belonging to the Anna E. Jacobs Estate. He thereafter converted a portion of those funds into a cashier's check and thereby remitted $5800 to Mr. Schultz, the administrator. He admitted that he withheld $608.97 of the funds belonging to the Anna E. Jacobs estate; that those funds remained in his possession and that he did not turn them over to the administrator of the Jacobs estate. As to that $608.97 *95 there was a final and legal adjudication that such funds were in Zeitinger's possession and were wrongfully withheld by him.
Our statutes concerning the discovery and recovery of assets of estates in the probate court are remedial and procedural. We notice them in detail.
"462.400. Proceedings to discover assetsaffidavitcitation.If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe that any person has concealed or embezzled, or is otherwise wrongfully withholding any goods, chattels, money, books, papers or evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before it, and compel such appearance by attachment."
Section 462.410 provides for the filing of interrogatories, the answers thereto and the examination of witnesses under oath in the event the party cited does not admit the allegations of the affidavit mentioned in Section 462.400. And Section 462.420 provides that upon refusal to answer proper interrogatories such person cited may be committed to jail until he makes answer or is discharged.
The statute which authorizes a finding of contempt, the issuance of an attachment and the commitment to jail is as follows: "462.430. Issues upon Interrogatories, how triedjudgment, how enforced.The issue upon the interrogatories and answers thereto shall be tried by a jury, or if neither of the parties require a jury, by the court, in a summary manner, and judgment shall be rendered according to the finding and for costs, and if convicted, the court shall compel the delivery of the property detained by attachment of his person for contempt, and the court shall commit him to jail until he comply with the order of the court."
Section 462.440 provides that "Like proceedings may be instituted on the affidavit of any person interested against executors, administrators", etc.
We have held that "The procedure authorized by those statutes `is a summary and quick method of bringing property into the estate * * *' * * * devised not merely to discover assets, but also to expedite the administration of estates by affording a new and special remedy for collecting assets." Davis v. Johnson, 332 Mo. 417, 58 S.W.2d 746, 748. These discovery and recovery statutes, which also authorize a judgment of contempt and commitment to jail are contained in but five sections. It is to be noted that Section 462.400 in terms provides that if any person conceals, embezzles or wrongfully withholds, "goods, chattels, money, books, papers or evidences of debt" of the deceased, the affidavit therein provided for may be filed. The fourth of these sections, 462.430, collects the "goods, chattels, money, books, papers, or evidences of debt", separately named in Section 462.400, into the word "property", and provides that after judgment, "the court shall compel the delivery of the property detained" (if the court needs to do so) by attachment for contempt and commitment to jail until the order of the court is complied with.
Money is a generic term. It has been held to be property. Shemwell v. People, 62 Colo. 146, 161 P. 157, 159. Money has been held also to be personal property within statutes authorizing personal property to be collected and recovered in citation proceedings such as were here adjudicated in Wayne County. In re Willich's Estate, 338 Ill.App. 289, 87 N.E.2d 327, 329. Money does not mean currency or specie alone, it means also wealth, capital and property. In re Robinson's Estate, 175 Misc. 433, 23 N.Y.S.2d 905, 907 and cases there cited. And "money" may be currency, not earmarked, and passing from hand to hand. Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504, 509. By the word "money" as used in Section 462.400 is not meant alone the specific currency, specie, check or other written instrument payable in money upon demand which the person charged actually received, at the time he received the money thereafter adjudged to have been concealed, embezzled or wrongfully withheld. The statutes do not limit the discovery and *96 recovery to the specific currency, specie, check or other written instrument payable in money on demand so originally received. Proceedings lie under these statutes against one who "has concealed or embezzled, or is otherwise wrongfully withholding any * * * money * * * of the deceased" even though the money of a deceased, or the proceeds of a collection for the estate of a deceased, or the proceeds of the sale of a chattel or property of such deceased were deposited by the person so charged in a bank and thus commingled with other monies of the person so charged in a general bank account, or otherwise converted. As an alternative remedy, it has been held that the contempt and attachment features of Section 462.430 may be waived and a money judgment may be awarded. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446; Wheeler, Adm'x v. Lipic, Mo., 243 S.W.2d 100. Davis v. Johnson, supra; In re Estate of Huffman, 132 Mo.App. 44, 111 S.W. 848.
As supporting his contention that the trial court erred in directing a verdict for defendants, the plaintiff argues that the word "property" in Section 462.430 cannot be held to mean or include money. From plaintiff's conclusion upon such argument, he asserts that the probate court had no jurisdiction to issue the commitment and that therefore his arrest and commitment to jail were unlawful. But with plaintiff's just above stated conclusion, assertion and position we do not agree.
As above pointed out Section 462.430 combines into the word "property", the money and other property items separately listed in Section 462.400. In the Missouri cases considering these sections of our statutes, the money of a deceased person, alleged by proper statutory affidavit to have been concealed, embezzled or wrongfully withheld from such deceased person's estate, has always been considered as property of the estate of such deceased person within Section 462.430; and our courts have uniformly assumed jurisdiction and proceeded under these four statutes to discover and collect such money. Davis v. Johnson, supra; Kunst v. Walker, Mo.App., 43 S.W.2d 886. See also, In re Willich's Estate, supra.
Plaintiff cites no authority to support his ipse dixit conclusion that "property" as used in Section 462.430 does not rationally include or mean money. We have found no authority which supports plaintiff's position thereon. From the above, and from the cases hereinabove noted it is clear to us, and we rule that the word "property" in Section 462.430 does include and comprehend "money" as that word appears and is used in Section 462.400. Money alleged to have been concealed, embezzled or wrongfully withheld from the estate of a deceased person as provided by Section 462.400 is clearly subject to be discovered and recovered in the manner above provided by these statutes. Where money is the subject matter of the proceeding, upon the later required and proper adjudications (as here), a probate court has undoubted jurisdiction to issue the commitment.
The general rule is that an action for false arrest and imprisonment will not lie against officers executing process where the acts were done in the lawful execution of process issued from a court having jurisdiction to issue the process, and where the writ or process is legal in form and there is nothing upon its face to indicate or apprise that it was issued without authority. Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S.W.2d 803; Burnett v. Prince, 272 Mo. 68, 197 S.W. 241; Ussery v. Haynes, 344 Mo. 530, 127 S.W.2d 410; 22 Am. Jur., False Imprisonment, §§ 66, 67, pp. 399, 400, 401. Under the facts and exhibits before us, the trial court did not err in sustaining the motions for directed verdict filed by defendant officers Mitchell, Siebels, and Scism, and by the defendant sheriff Shlater. From the record before us it appears that defendant J. Walter Schultz, the administrator, did no more than to file the original affidavit on January 8, 1943. It does not at all appear that he was present or had any knowledge of the issuance of the commitment or had anything whatever to do with plaintiff's arrest or imprisonment, or that he even had any knowledge of it. The trial court did *97 not err in sustaining the motion for directed verdict filed by J. Walter Schultz.
But, as further supporting his contention of error by the court below, plaintiff next argues that even if the probate court had jurisdiction under Section 462.430 to issue the commitment, that such statute was violative of Art. I, Sec. 11 of the Constitution because it authorized his imprisonment for dept. That is the sole ground of plaintiff's attack here upon Section 462.430. Plaintiff's just stated contention is without merit.
It has been said that: "The power of a court to punish for contempt of its proceedings, for disobedience of its lawful orders, is inherent in the being of every court of general jurisdiction. Without it the orders of a court would be without force or effect, would command neither respect nor obedience, and there would be neither warrant nor reason for its longer existence. From the earliest annals of our law this power has been exercised. It rests upon the fundamental principles of judicial establishments, and is inseparable from the existence, as well as from the usefulness, of a court of general jurisdiction. 4 Bl. Comm. 286". In re Rosser, 8 Cir., 101 F. 562, 564. And this court has said: "The right to punish for contempt disobedience to all lawful mandates of a court is not a mere formal incident to a court, but an inherent power essential to the very existence of a court of record, and granted as a necessary incident in establishing a tribunal as such, the absence of which power in a court would render lifeless, and practically ineffectual, that great branch of this, as of all governments. Surely, if so essential a power in our courts was to be stricken down, the framers of our constitution would have chosen more apt words than those contained in section 16 of article 2 of our present constitution, (Now Section 11 of Article I) providing `that imprisonment for debt shall not be allowed except for the non-payment of fines and penalties imposed for violation of law.' That is a mere constitutional restriction upon the courts against the enforcement of a given character of judgments against the citizens, but in no sense to be construed as a strike at, or a restriction upon, the exercise of that vital, inherent power of the courts to enforce any and all lawful orders by imprisonment for contemptuous disobedience thereof." In re Knaup, 144 Mo. 653, 658, 46 S.W. 151, 154.
In Watkins v. Rives, 75 U.S.App.D.C. 109, 125 F.2d 33, 41, Watkins claimed some $12,000.00 of the assets of an estate (which money was in Watkins' possession) as his personal property, contending it was a gift from decedent. In appropriate action the collector of the estate contended that Watkins held such monies as estate assets, refused to deliver them, and had concealed them. A rule to show cause was issued against Watkins. Upon a trial those issues were determined adversely to Watkins, who was thereupon ordered to deliver the money to the estate. Watkins refused to turn over the money and was adjudged in contempt and committed to jail by the probate court. Upon habeas corpus Watkins contended that he was imprisoned for debt. It was there said: "The effect of the commitment for contempt is not, as appellant contends, imprisonment for debt, but is instead, imprisonment for failure to comply with the court's order to turn over assets, or the proceeds thereof, in specie. * * * The power of equity to order a trustee to turn over specific assets and to commit for contempt for failure to do so is well established. (Citing cases) The probate court is empowered to enforce its decrees with those powers which may be exercised by the court of equity. It properly exercised that power over appellant for his refusal to comply with the terms of its order."
In Re Clift's Estate (Helwing v. Heath), 108 Utah 336, 159 P.2d 872, 876, the successor administrators petitioned for an order directing a former executor, who had been removed, to show cause why the latter should not be punished as for contempt for failure to pay over to them the sum of $5,032.02 which the court had previously adjudicated was estate assets and had ordered the former executor to pay over to the successor administrators. Upon the contention of the former executor that an imprisonment upon adjudication for *98 contempt would imprison him for debt, the court said: "Nor does imprisonment for contempt by failure to comply with an order which the court could lawfully make violate Section 16, Article I of the Constitution, which prohibits imprisonment for debt. Even where the violation of the order is the failure to pay over money for the recovery of which a judgment has been entered on which an execution may issue, if the order is one which the court could lawfully make, the imprisonment is not for the failure to pay the debt, but because of the failure to obey a lawful order of the court which constitutes contempt of court. The court under such circumstances has the power to coerce obedience to its orders."
In Fuller v. Smedley, Mo.App., 48 S.W.2d 131, 133, Fuller had received 340 radios on consignment, had sold them for $6500, and, at the time of the appointment of the receiver had the money in his possession, but refused to comply with the court's order to turn that money over to the receiver. Fuller was adjudged guilty of contempt and committed to jail. The court there said in part: "And this power to commit extends to the situation where the party refuses to turn over to the receiver money that is the subject-matter of the litigation. 13 C.J. § 13, pp. 12 and 13. Nor is such order an infringement on the constitutional inhibition against imprisonment for debt. (Const. art. 2, § 16.) 13 C.J. § 134, p. 88; Coughlin v. Ehlert, Jailor, 39 Mo. 285, 286. The order of commitment, in a case where what is enjoined can be done by the party, very properly should read that the commitment is to continue until the party shall have complied with the order or until released according to law. Ex parte Crenshaw, 80 Mo. 447, 452; McNealey v. Rouse, Sheriff, Mo.Sup., 264 S.W. 383. The object of the order is not to adjudicate the rights of the parties to the suit, nor to adjudge that one owes and must pay the other; but the object of the order is merely to preserve the property and keep it within the jurisdiction of the court, and to vindicate the authority of the court. No doubt the ultimate result of the suit is not the purpose of the order of commitment; and hence it is, in no sense, an imprisonment for debt."
We think it is clear that under the instant circumstances Section 462.430 does not infringe the prohibition of Article I, Section 11 of our Constitution. See also, In re Knaup, supra; 17 C.J.S., Contempt, § 13, pages 17, 18, 19 and authorities there collected; In re Rosser, supra; In re Trombley, 31 Cal.2d 801, 193 P.2d 734; Adams v. Rakowski, 319 Ill.App. 556, 49 N.E.2d 733.
This case is unlike White v. Hutton, Mo.App., 240 S.W.2d 193 and In re Fowler, 310 Mo. 339, 275 S.W. 529, which habeas corpus cases were ruled upon the fatal defects in the judgments of contempt and in the commitments in those cases. No such questions are raised in this case. And, too, in the instant case, plaintiff by his own testimony established that the $608.97 remained in his "possession in cash money."
The judgment is affirmed.
All concur.